IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JAMES JARDINE, | ) | Case Nos. 10-3335 SC, |
| | ) | 10-3336 SC |
|   Plaintiff, | ) | |
| | ) | Related Cases: 10-3318 SC, |
|        v. | ) | 10-3319 SC |
| | ) | |
| MARYLAND CASUALTY COMPANY, and | ) | |
| DOES 1 through 50, | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTIONS FOR SUMMARY JUDGMENT |
|     Defendants. | ) | |
| | ) | |
| JAMES JARDINE, | ) | |
| | ) | |
|   Plaintiff, | ) | |
| | ) | |
|        v. | ) | |
| | ) | |
| EMPLOYERS FIRE INSURANCE | ) | |
| COMPANY, and DOES 1 through 50, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

## I.   **INTRODUCTION**

Before the Court are four related actions in which Plaintiff James Jardine ("Jardine") brings claims against insurance companies Employers Fire Insurance Company ("Employers") and Maryland Casualty Company ("Maryland").  Case Number 10-3335 ("10-3335") involves Employers' refusal to pay the policy amount after a fire damaged Jardine's property.  Case Number 10-3336 ("10-3336")

involves Employers' refusal to pay after a wall on the same property was damaged.  Case Numbers 10-3318 ("10-3318") and 10-3319 ("10-3319") concern Maryland's refusal to pay out on a policy after the same fire and wall damage occurred.

In March 2011, OneBeacon Insurance Company ("OneBeacon"), Employers' predecessor in interest, moved for summary judgment in both 10-3335 and 10-3336.[1]  10-3335 ECF No. 30; 10-3336 ECF No. 23.  The Court denied both motions in April 2011.  10-3336 ECF No. 39 ("OneBeacon MSJ Order").  Maryland subsequently moved for summary judgment in 10-3318 and 10-3319 on the grounds that Jardine had been fully compensated for his fire damage and Jardine's wall claim was barred under his policy.  10-3318 ECF Nos. 35, 36.  The Court granted Maryland's motions and entered judgment for Maryland in both 10-3318 and 10-3319.  10-3318 ECF Nos. 54 ("Maryland MSJ Order"); 55 ("Maryland Judgment").

Now Employers moves for summary judgment in 10-3335 and 10-3336 for a second time; these Motions are fully briefed.  10-3335 ECF Nos. 51 ("Fire MSJ"), 56 ("Fire Opp'n"), 62 ("Fire Reply"); 10-3336 ECF Nos. ("Wall MSJ"), 55 ("Wall Opp'n"), 63 ("Wall Reply").  Employers argues that Jardine may not continue to prosecute his claims against Employers in light of the Court's Order granting Maryland's motions for summary judgment.  Because the instant motions involve the same parties, the same legal standard, and many

---

[1] OneBeacon Insurance Company ("OneBeacon") was originally named as a defendant in the 10-3335 and 10-3336 actions and moved for summary judgment in April 2011.  Employers was later substituted as a party to the actions in place of OneBeacon because the policy underlying the disputes was neither issued nor underwritten by OneBeacon, but rather by Employers acting under the trade name "One Beacon Insurance."  See 10-3336 ECF No. 41 ("Stip. And Order Substituting Party").  The Court now refers to OneBeacon and Employers interchangeably.

United States District Court
For the Northern District of California

2

**United States District Court**
For the Northern District of California

of the same facts, the Court addresses them jointly in this Order.
For the following reasons, the Court GRANTS Employers' Motions for
Summary Judgment in 10-3335 and 10-3336.

**II.   BACKGROUND**

The Court has already recounted the relevant facts in its two
prior orders on OneBeacon and Maryland's motions for summary
judgment.  See OneBeacon MSJ Order at 2-6; Maryland MSJ Order at 2-
7.  During the relevant time period, Jardine was an insurance agent
and owned a commercial building located at 24800-24808 Mission
Boulevard in Hayward, California ("the Property").  Maryland MSJ
Order at 3; OneBeacon MSJ Order at 2.  In May 2005, Jardine leased
a portion of the Property to Martha Chavez ("Chavez") and Luz Serna
("Serna"), who used it to operate a business, Bridal & Beyond.
OneBeacon MSJ Order at 2.  The lease ran from May 15, 2005 to May
14, 2007.  Id. at 2-3.  During their occupancy of the Property,
Chavez and Serna applied a plaster treatment to the Property's
walls to improve the Property's appearance.  Id. at 3.  This
treatment interacted negatively with the cement block walls,
causing damage.  Id.  An engineer hired by Jardine, William Jones
("Jones"), concluded that the damage was caused by a sulfate attack
on the wall, resulting from a combination of moist conditions, the
application of the wrong type of plaster, and inadequate wall
preparation.  See Maryland MSJ Order at 4-5.

On October 28, 2006, Chavez and Serna sold their business and
assigned their lease to Raquel Pardo ("Pardo").  OneBeacon MSJ
Order at 3.  Around this time, Plaintiff became aware of the wall
damage.  Id.  Pardo entered into a new lease with Plaintiff on

1    April 25, 2007.  Id.  On May 15, 2007, OneBeacon issued an

2    insurance policy to Pardo that listed both Plaintiff and Pardo as

3    named insureds.  Id.

4        On June 13, 2007, a halogen light fixture in Pardo's unit set

5    fire to some of her dresses, further damaging the property.

6    Maryland MSJ Order at 3.  Pardo breached her rental agreement and

7    stopped paying rent in October of 2007.  Id. at 4.  It is unclear

8    whether the fire or plaster damage was a factor in Pardo's decision

9    to breach her lease.  Id.

10       Jardine tendered his claim for fire and wall damage to

11   Employers on December 20, 2007.  OneBeacon MSJ Order at 3.  In

12   investigating the fire claim, Employers reviewed the Hayward Fire

13   Department incident report, reports from the Hayward Fire

14   Prevention inspector and ABI Electric, a repair estimate prepared

15   by Jardine's consultant, and an inspection and cost estimate

16   prepared by Erik Quinn, a third party adjuster.  Id.  Jardine's

17   consultant estimated the damages at $34,423, plus the unestimated

18   expense of "code upgrades" that might be required by the city of

19   Hayward.  Id.

20       On January 16, 2008, Jardine commenced an action against

21   Chavez, Serna, and Pardo in Alameda County Superior Court (the

22   Chavez Action).  Id. at 4.  Jardine brought claims for breach of

23   contract, waste, and negligence against Chavez, Serna, and Pardo

24   for the damage to the wall.  Id.  Jardine's claims against Pardo

25   were dismissed without prejudice.  Chavez and Serna appeared pro

26   se.  After a bench trial, judgment was entered in favor of Jardine

27   and against Chavez and Serna in the amount of $1,003,854.20 in

28   damages.  Id.

4

United States District Court
For the Northern District of California

As to Jardine's fire loss claim with Employers, Ronald Cook ("Cook"), Employers' coverage counsel, negotiated a settlement with Plaintiff which was executed on April 2, 2008 ("the Settlement Agreement"). Id. Under the Settlement Agreement, Employers agreed to pay Plaintiff $39,781.25 for repair and lost business in exchange for a release of any and all claims against Employers arising out of the fire loss. Id. Jardine and Cook exchanged several drafts of the Settlement Agreement, and Jardine's modifications were ultimately agreed to by Employers. Id. at 4-5.

Employers denied the wall damage claim in April 2008 on the basis that the damage was visible and known to both Pardo and Jardine as early as November 2006 when Pardo assumed the lease -- before the Employers policy incepted on May 15, 2007. Id. at 5. Employers also denied Jardine's third-party claim against Pardo, writing: "your policy does not permit liability claims against property you own." Id.

On May 5, 2009, Jardine commenced a second state court action against Pardo with the same causes of action as the Chavez action. Id. After a bench trial, Jardine ultimately received a judgment against Pardo in the amount of $1,224,203. Jardine v. Pardo, No. HG09-450634 (Cal. Super. Ct. May 27, 2010) (hereinafter, "the Pardo judgment").

On September 9, 2009, Jardine sold the Property to the City of Hayward for $1.3 million for the construction of a public improvement project. OneBeacon MSJ Order at 5. The Property was subsequently destroyed. Id.

In March 2010, Jardine commenced these actions against Employers and Maryland in Alameda County Superior Court; Defendants

5

**United States District Court**
For the Northern District of California

subsequently removed.  In 10-3335, Plaintiff alleges Employers (1) committed fraud, and (2) breached the implied covenant of good faith and fair dealing ("the implied covenant") when it settled Plaintiff's fire claim.  10-3335, ECF No. 1 Ex. A ("10-3335 Compl.").  Jardine alleges that Employers falsely represented to him the policy's coverage limits, which induced Jardine into signing the Settlement Agreement.  Id.  In 10-3336, Jardine brings claims for breach of contract and breach of the implied covenant in connection with Employers' handling of his claim for wall and plaster damage.  10-3336, ECF No. 47 ("10-3336 Am. Compl.").  Jardine has also asserted a cause of action under Insurance Code Section 11580 in an attempt to collect on the Pardo judgment under the Employers policy's third-party liability coverage.[2]  Id.

In March 2011, Employers moved for summary judgment in both 10-3335 and 10-3336.  See 10-3335 ECF No. 30; 10-3336 ECF No. 23. The Court denied the 10-3335 motion on the grounds that a genuine issue of material fact existed as to the enforceability of the Settlement Agreement and certain elements of Jardine's fraud claim. OneBeacon MSJ Order at 9-10.  Further, the Court found no merit in Employers' conclusory argument that Plaintiff was not damaged by the alleged fraud.  Id. at 11.  The Court also denied the 10-3336 motion, finding that there was a triable issue of fact as to whether the wall damage manifested prior to the inception of the Employers policy.  OneBeacon MSJ Order at 16.

Maryland found more success when it subsequently moved for summary judgment in 10-3318 and 10-3319.  See 10-3318 ECF Nos. 35,

---

[2] Jardine also asserted causes of action for violations of the Fair Claims Settlement Practices Act in both 10-3335 and 10-3336, but subsequently stipulated to their dismissal.  See 10-3335 ECF No. 49; 10-3336 ECF No. 50.

36.  With respect to Jardine's claim for fire damage in 10-3319, the Court found that the $41,099.22 in insurance payments Jardine received from Employers and Maryland "more than fully compensated [Jardine] for the $34,412.10 repair costs resulting from his fire loss." Id. at 13-15.  The Court also found that Jardine was not entitled to code upgrade coverage under his Maryland policy because he never performed any code upgrades after the fire and it was unclear whether code upgrades were even necessary.  Id. at 17. Finally, the Court determined that Jardine was not entitled to business income coverage (i.e., coverage for loss of rent) under his Maryland policy because Pardo moved out after the "period of recovery," i.e., the time it would have taken to repair the property with reasonable speed or similar quality.  Id. at 19.  As to 10-3318, the Court determined that Jardine's claim for wall damage was barred by a provision in his Maryland policy which excluded coverage for damage resulting from "deterioration." Maryland MSJ Order at 11.

Seizing on the Court's Order granting Maryland's motions for summary judgment, Employers now moves for summary judgment in 10-3335 and 10-3336 for a second time.  Employers argues that because the Maryland and Employers policies are substantially similar, the Court's Maryland MSJ Order precludes Jardine from proceeding with his claims against Employers.  With respect to the 10-3335 action, Employers argues that the Court has already found that Jardine has been more than fully compensated for the cost of repairing the fire damage.  Fire MSJ at 7.  Employers further argues that the language in the Maryland and Employers policies concerning code upgrade and business income coverage is substantially similar and that the

**United States District Court**
For the Northern District of California

1   Court already found that Jardine was not entitled to such coverage

2   under the Maryland policy.  Id. at 8-12.  As to the 10-3336 action,

3   Employers argues that its policy contains essentially the same

4   deterioration exclusion that the Court found applicable to

5   Jardine's claim against Maryland.  Wall MSJ at 6-15.  Employers

6   also argues that Jardine may not enforce the Pardo judgment against

7   Employers because Pardo was aware of the wall damage before the

8   inception of the policy and because the policy does not provide

9   coverage for economic losses such as loss of rental income.  Id. at

10  15-20.

11

12  **III.  LEGAL STANDARD**

13       Entry of summary judgment is proper "if the movant shows that

14  there is no genuine dispute as to any material fact and the movant

15  is entitled to judgment as a matter of law."  Fed. R. Civ. P.

16  56(a).  Summary judgment should be granted if the evidence would

17  require a directed verdict for the moving party.  Anderson v.

18  Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  Thus, "Rule 56[]

19  mandates the entry of summary judgment . . . against a party who

20  fails to make a showing sufficient to establish the existence of an

21  element essential to that party's case, and on which that party

22  will bear the burden of proof at trial."  Celotex Corp. v. Catrett,

23  477 U.S. 317, 322 (1986).  "The evidence of the nonmovant is to be

24  believed, and all justifiable inferences are to be drawn in his

25  favor."  Anderson, 477 U.S. at 255.  However, "[t]he mere existence

26  of a scintilla of evidence in support of the plaintiff's position

27  will be insufficient; there must be evidence on which the jury

28  could reasonably find for the plaintiff."  Id. at 252.  "When

8

opposing parties tell two different stories, one of which is
blatantly contradicted by the record, so that no reasonable jury
could believe it, a court should not adopt that version of the
facts for purposes of ruling on a motion for summary judgment."
Scott v. Harris, 550 U.S. 372, 380 (2007).  "A subsequent motion
for summary judgment based on an expanded record is always
permissible."  Williamsburg Wax Museum, Inc. v. Historic Figures,
Inc., 810 F.2d 243, 251 (D.C. Cir. 1987).

**IV.  DISCUSSION**

Most of the issues raised in Employers' motions for summary
judgment have already been addressed in the Court's Order granting
summary judgment in favor of Maryland.  As the facts surrounding
Jardine's wall and fire damage are the same and the Maryland and
Employers' insurance policies are functionally equivalent in most
relevant respects, the Court reaches the same conclusions now as it
did in the Maryland MSJ Order.

**A.   Jardine's Claim for Fire Damage (10-3335)**

Employers argues that it is entitled to summary judgment on
Jardine's claims for fraud and breach of the covenant of good faith
and fair dealing in 10-3335 because Jardine did not suffer any
damages.  See Fire MSJ at 2.  Pointing to the Court's Maryland MSJ
Order, Employers argues that Jardine was more than fully
compensated for his fire damage under his Employers policy and is
not entitled to additional insurance proceeds for code upgrades or
loss of rental income.  See id.  The Court agrees.

As explained in the Maryland MSJ Order, Jardine received a
total of $41,099.22 in insurance proceeds from Employers and

**United States District Court**
For the Northern District of California

Maryland to compensate him for damage caused by the fire on the Property.  <u>See</u> Maryland MSJ Order at 13.  Jardine has conceded that the estimated cost to repair the damage was $34,423.20, excluding the cost of any code upgrades.  <u>See</u> <u>id.</u> at 14.  Accordingly, Jardine was more than fully compensated for the cost of fire damage repairs.  As before, Jardine does not dispute that the cost of basic repairs for the fire damage was $34,423.20, but argues that he was entitled to additional insurance proceeds for code upgrades, depreciation, and lost rental income.  <u>See</u> Fire Opp'n at 7, 11. These arguments lack merit.

> 1.   <u>Code Upgrade Coverage</u>

Jardine argues that he was entitled to the cost of code upgrades under the "Increased Cost of Construction" coverage in the Employers policy.  <u>See</u> <u>id.</u> at 8.  This provision states, in relevant part:

> e.   Increased Cost of Construction
>       . . .
>       (2)  In the event of damage by a Covered Cause of
>            Loss to a building that is Covered Property, we
>            will pay the increased costs incurred to comply
>            with enforcement of an ordinance or law in the
>            course of repair, rebuilding or replacement of
>            damaged parts of that property, subject to the
>            limitations stated in e.(3) through e.(9) of
>            this Additional Coverage.
>       . . .
>       (7)  With respect to this Additional Coverage:
>            (a)  We will not pay for the Increased Cost of
>                 Construction.
>                 (I)  Until the property is actually
>                      repaired or replaced, at the same or
>                      another premises; and
>                 (II) Unless the repairs or replacement are
>                      made as soon as reasonably possible
>                      after the loss or damage, not to
>                      exceed two years.  We may extend this

1             period in writing during the two
2     years.

3     10-3335 Silberstein Decl.[3] Ex. 1 ("Policy") at OB 00146.

4         Addressing similar policy language in its Order on Maryland's
5     motion for summary judgment, the Court concluded that Jardine was
6     not entitled to coverage because Jardine never performed any code
7     upgrades after the fire.  See Maryland MSJ Order at 17.  The Court
8     sees no reason why it should reach a different conclusion in the
9     instant action.  The Employers policy expressly provides that
10    Employers will not pay for the increased costs of construction
11    "[u]ntil the property is actually repaired or replaced."  Policy at
12    OB 00146.  Jardine does not dispute that he never repaired or
13    replaced the Property and, as the Property has been sold to the
14    City of Hayward and the building destroyed, he never will.  As in
15    the Maryland MSJ Order, the Court holds that Jardine cannot recover
16    for code upgrades which were never performed.  To hold otherwise
17    would award Jardine the kind of windfall payment that is expressly
18    foreclosed by the policy.[4]  See Maryland MSJ Order at 17.

19

20    _____

21    [3] Dawn A. Silberstein ("Silberstein"), attorney for Employers,
      submitted declarations in support of Employers' 10-3335 Motion and
22    Reply Brief.  10-3335 ECF Nos. 51-1 ("10-3335 Silberstein Decl."),
      62-1 ("10-3335 Silberstein Reply Decl.").  Silberstein also filed
23    declarations in support of Employers' Motion and Reply in 10-3336.
      10-3336 ECF Nos. 52-5 ("10-3336 Silberstein Decl."), 63-1 ("10-3336
24    Silberstein Reply Decl.").

25    [4] Jardine submits identical declarations from two general
      contractors, Victor Periera ("Periera") and Gary Fair ("Fair"),
26    stating that City of Hayward would have required code upgrades had
      Jardine applied for a building permit to repair the fire damage on
27    the property.  See 10-3335 ECF Nos. 66 ("Periera Decl.") ¶ 8, 59
      ("Fair Decl.") ¶ 8.  These declarations are irrelevant.  Even if
28    building code upgrades would have been required, it remains
      undisputed that Jardine never performed them.

United States District Court
For the Northern District of California

1    Jardine argues that, in the OneBeacon MSJ Order, "the Court

2    found that triable issues of fact existed concerning building code

3    upgrade coverage." Fire Opp'n at 11.  It is unclear what portion

4    of the OneBeacon MSJ Order Jardine is referring to as he does not

5    provide any citations, quotations, or page references.  However, it

6    is clear that the Court made no such finding in its OneBeacon MSJ

7    Order.[5]

8    Jardine also argues that he is entitled to payment for code

9    upgrades because, in violation of the policy terms, Employers

10   delayed adjusting his claim and failed to "give notice of [its]

11   intentions within 30 days after [it] receive[d] the sworn proof of

12   loss." See Fire Opp'n at 10 (citing Policy at OB 00150).  Jardine

13   asserts that he made his claim in June 2007, but, as late as April

14   2008, Employers had not appraised the damage, obtained a repair

15   estimate, or determined if replacement was appropriate.  See id.

16   Jardine reasons that Employers should not be able to avoid its

17   responsibility to provide code upgrade coverage by delaying the

18   fire claim until the City of Hayward acquired the property.  See

19   id.

20   Jardine's argument concerning unreasonable delay fails for at

21   least three reasons.  First, and most importantly, Jardine does not

22   point to any language in the Employers policy stating that

23   Employers' delay or failure to give notice within 30 days would

24   trigger an obligation to pay for code upgrades.  The Employers

25   _____

     [5] Jardine may be referring to the Court's discussion of whether he
26   had presented sufficient evidence to support his fraud claim.  See
     OneBeacon MSJ Order at 10-11.  In that discussion, the Court
27   addressed allegations that Employers had misrepresented the scope
     of its code upgrade coverage, but never concluded that a triable
28   issue of fact existed as to Jardine's entitlement to such coverage.
     See id.

United States District Court
For the Northern District of California

1  policy does state that Employers will not pay for code upgrades
2  unless and until such upgrades are made.  As discussed above, it is
3  undisputed that Jardine never has and never will perform these code
4  upgrades.  Second, Jardine's conclusory assertion that Employers
5  unreasonably delayed processing his claim is blatantly contradicted
6  by the record.  Documents submitted by Employers show that Jardine
7  did not tender his claim for the June 2007 fire damage until
8  December 20, 2007.[6]  See 10-3335 ECF No. 62-5 ("Cook Reply Decl.")
9  Ex. A ("Dec. 20, 2007 Tender").  On April 2, 2008, Jardine and
10 Employers entered into the Settlement Agreement through which
11 Jardine agreed to accept $39,781.25 to settle his fire claim.[7]  See
12 10-3335 Silberstein Reply Decl. Ex. 10 ("Settlement Agreement").
13 In light of these undisputed facts, Jardine cannot seriously
14 contend that Employers unreasonably delayed processing his fire
15 claim.  Third, Jardine has presented no evidence showing that he
16 ever submitted a sworn proof of loss to Employers in connection
17 with his claim for fire damage.  See Cook Reply Decl. ¶ 9
18 (declaring that Jardine "never submitted[] a Sworn Statement in
19 Proof of Loss for the fire claim").[8]
20
21 [6] Jardine argues that he "made his [fire] claim in June 2007."
22 Fire Opp'n at 10.  However, Jardine's declaration is vague on when
   he actually tendered his claim to Employers, stating only that the
23 fire occurred in June 2007 and that he "eventually submitted the
   claim to [Employers]."  10-3335 ECF No. 57 ("Jardine Decl.") ¶ 8
24 (emphasis added).  Jardine has submitted no evidence, testimonial
   or otherwise, suggesting that he tendered his claim any earlier
25 than December 20, 2007.

26 [7] The declaration of Erik Quinn ("Quinn"), a third-party adjustor
   who worked on Jardine's fire claim, also shows that Jardine was
27 contacted about his claim no later than six days after it was
   tendered.  See Quinn Reply Decl. ¶¶ 3-4.
28 [8] Jardine did submit a proof of loss in connection with his claim
   for wall damage in June 2010, almost three years after he submitted

13

1    For the foregoing reasons, the Court finds that Jardine has

2  failed to raise a genuine issue of material fact as to whether he

3  was entitled to coverage for code upgrades.

4              2.    <u>Depreciation Coverage</u>

5    Jardine argues that "[e]ven if Employers was not obligated to

6  pay the full cost of repair, at least they were obligated to pay

7  the value of the fire damaged portion of the building."  Fire Opp'n

8  at 9.  In other words, Jardine contends that Employers is obligated

9  to pay for the depreciated value of the Property after the fire.

10 <u>See</u> <u>id.</u>  This argument runs contrary to the express terms of the

11 Employers policy.  The policy provides:

12

13    4.    Loss Payment

14         a.    In the event of loss or damage covered by this
                 Coverage form, <u>at our option</u>, we will either:

15              (1)  Pay the value of lost or damaged property;

16              (2)  Pay the cost of repairing or replacing the
                     lost or damaged property, subject to b.
                     below;

17              (3)  Take all or any part of the property at an
                     agreed or appraised value; or

18              (4)  Repair, rebuild or replace the property
                     with other property of like kind and

19                   quality, subject to b. below.

20              . . .

21         b.    The cost to repair, rebuild or replace does not
                 include the increased cost attributable to

22               enforcement of any ordinance or law regulating
                 the construction, use or repair of any

23               property.

24 Policy at OB 00150 (emphasis added).  Thus, under the policy,

25 Employers had the discretion to compensate Jardine for his loss in

26 one of four ways.  Employers chose option number two and paid for

27

28 his claim.  <u>See</u> Cook Reply Decl. Ex D ("June 2010 Sworn Proof of
   Loss").

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   the cost of repairs.  Contrary to Jardine's assertion, Employers

2   was under no obligation to choose option number one and pay for the

3   value of the damaged property.[9]  Accordingly, Jardine has failed to

4   raise a triable issue of fact as to whether he was entitled to

5   compensation for depreciation of the Property.

6           3.   Coverage for Loss of Rental Income

7       Jardine claims that he is also entitled to loss of rental

8   income for the period after Pardo ceased paying rent in October

9   2007.  The Court previously held that Jardine could not recover for

10  loss of rental income against Maryland because Pardo stopped paying

11  rent after the conclusion of "the period of restoration," as

12  defined by the Maryland policy.  See Maryland MSJ Order at 18-21.

13  The period of restoration under the Employers policy is even more

14  limited than the period of restoration under the Maryland policy.

15  Accordingly, Jardine's claim for loss of rental income is barred.

16      The Employers policy provides that "[Employers] will pay for

17  the actual loss of Business Income you sustain due to the necessary

18  suspension of your operations during the period of restoration."

19  Policy at OB 00155 (internal quotation marks omitted).  The

20  Employers policy defines the period of restoration as the period of

21  time that:

22  ///

_____

23  [9]  Jardine also argues that "he had at least two properties he could
    have built a replacement building on, if Employers had only paid
24  him the replacement costs allowed under the policy."  Fire Opp'n at
    10.  The Court finds that Jardine's ownership of replacement
25  properties is completely irrelevant to his rights under the
    Employers policy.  As explained above, under the policy, Employers
26  had the option of paying Jardine for the cost to repair the
    building rather than the cost of building on a replacement
27  property.  Employers was under no obligation to pick Jardine's
    preferred method of compensation.  Further, Jardine has made no
28  showing that his $34,423.20 in fire damage entitled him to recover
    the replacement cost of the entire building.

**United States District Court**
For the Northern District of California

      a.   Begins:
          (1)   72 hours after the time of direct physical loss
               or damage . . . ; or
          (2)   Immediately after the time of direct physical
               loss or damage . . . ; and
      b.   Ends on the earlier of
          (1)   The date when the property at the described
               premises should be repaired, rebuilt or
               replaced with reasonable speed and similar
               quality; or
          (2)   The date when business is resumed at a new
               permanent location.

Id. at OB 00161.  Unlike the Maryland Policy, the period of restoration under the Employers policy "does not include any increased period required due to the enforcement of any ordinance or law[.]"   Id.  In other words, under the Maryland policy, code upgrades cannot operate to extend the period of recovery.

Jardine concedes that the fire occurred on June 13, 2007 and that Pardo ceased paying rent on October 1, 2007.  See Fire Opp'n at 5, 11.  Thus, at trial, Jardine would have the burden of showing that the period of recovery, i.e., the time it would have taken to repair the property with "reasonable speed and similar quality," exceeded 106 days.  Based upon a repair estimate prepared by Jardine's contractor, VP construction, the Court previously found that the period of recovery for Jardine's fire damage was only 60 days.  Maryland MSJ Order at 19-20.  Jardine did not challenge this estimate before and does not challenge it here.  In light of these facts, the Court finds that Jardine has failed to raise a genuine issue of material fact as to whether he lost rental income during

the period of restoration.  Accordingly, his claim is barred by the express terms of the Employers policy.[10]

Relying on the identical declarations of his contractors, Periera and Fair, Jardine argues that repairs on the Property would have taken eight months to complete.  <u>See</u> Fire Opp'n at 12.  Both declarations state that the "building code upgrade and energy requirements" would have taken an additional eight months to complete.  Fair Decl. ¶ 9; Periera Decl. ¶ 9.  However, the Employers policy expressly provides that the period of restoration does not include any increased period required to perform such code upgrades.  <u>See</u> Policy at OB 00161.  Accordingly, the Periera and Fair declarations are irrelevant to determining the period of restoration.

Jardine also argues that he is entitled to lost rent after October 2007 because Employers delayed processing his claim until months after the June 2007 fire.  Fire Opp'n at 12.  This argument lacks merit.  Jardine failed to tender his claim to Employers until December 20, 2007, over two months after Pardo ceased paying rent and six months after the fire.  <u>See</u> Dec. 20, 2007 Tender.  As discussed above, once it was tendered, Employers promptly responded to and settled Jardine's claim.  Further, the policy does not provide for an extension of the period of restoration due to a delay in the processing or tendering of a claim.

Finally, Jardine argues that this Court has already "acknowledged that Jardine did present evidence necessary to establish a triable issue of fact that he incurred $79,200 in lost

---

[10] Additionally, there is evidence that Jardine received $9,000 for lost rent under his settlement agreement with Employers.  <u>See</u> Cook Reply Decl. C at 3.

**United States District Court**
For the Northern District of California

rent reimbursable under the Employers policy."  Fire Opp'n at 12.

Once again, Jardine has failed to provide any citation to the

record so the basis for his assertion is unclear.  In its OneBeacon

MSJ Order, the Court did reject Employers' argument that Jardine

had presented no evidence that he was damaged by Employers' alleged

misrepresentation.  OneBeacon MSJ at 11-12.  The Court found that a

declaration previously made by Jardine was sufficient to create a

genuine issue of material fact concerning his damages, including

lost rent.  Id. at 11-13.  However, in its prior motion for summary

judgment, Employers did not raise (and, thus, the Court did not

address) the limitations on recovery for lost rental income imposed

by the Employers policy.  See id.  Based on the expanded record now

before the Court, it is clear that no genuine issue of material

fact exists as to Jardine's entitlement to coverage for lost rent.

> 4.    Jardine Fails to Raise a Triable Issue of Fact as to
>       Damages

The Court finds that Jardine has been more than fully

compensated for his claim for fire damage under the Employers

policy.  The undisputed evidence shows that Jardine received

$41,099.22 for $34,423.20 in repair costs for his fire damage and

that he is not entitled to additional coverage for code upgrades,

depreciation, or loss of rental income.  Accordingly, Jardine's

claims for fraud and breach of the covenant of good faith and fair

dealing must fail.

In order to establish a cause of action for fraud, Jardine

must prove five distinct elements: (1) that Employers made a

material misrepresentation, (2) with knowledge of falsity, (3) with

intent to defraud Jardine or induce reliance, (4) that Jardine

United States District Court
For the Northern District of California

justifiably relied upon the false statement, and (5) that Jardine was damaged thereby.  See Seeger v. Odell, 18 Cal. 2d 409, 414 (Cal. 1941); Cicone v. URS Corp., 183 Cal. App. 3d 194, 200 (Cal. Ct. App. 1986).  In the instant action, there is no genuine issue of material fact as to the fifth element -- Jardine received all that he was entitled to under the Employers policy.  Accordingly, the Court GRANTS Employers' motion for summary judgment as to Jardine's 10-3335 claim for fraud.

In order to establish a cause of action for breach of the covenant of good faith and fair dealing, Jardine must establish (1) that a benefit was due under the terms of the policy and (2) that the insurer unreasonably withheld that benefit without probable cause.  See Gruenberg v. Aetna Ins. Co., 9 Cal. 3d. 566, 575 (Cal. 1973).  Again, there is no genuine issue of material fact as to the second element because Jardine has received everything he is due under the policy.  Accordingly, the Court GRANTS Employers' motion for summary judgment as to Jardine's 10-3335 claim for breach of the covenant of good faith and fair dealing.

**B.  Jardine's Claim for Wall Damage (10-3336)**

In 10-3336, Jardine has brought first-party claims for breach of contract and the implied covenant, asserting that Employers violated the terms of the policy when it refused to compensate him for damage to his wall.  Jardine has also brought a third-party claim to enforce the Pardo judgment against Employers under California Insurance Code § 11580.  Employers argues that Jardine's first-party claims are barred by the deterioration exclusion in the Employers policy.  Employers also argues that Jardine's third-party claim is barred because Pardo and Jardine discovered the wall

**United States District Court**
For the Northern District of California

1   damage before the inception of the policy and because the Policy

2   does not provide Jardine with coverage for economic losses such as

3   lost rent.   The Court agrees with Employers.

4          1.    First-Party Claims for Breach of Contract and the

5                Implied Covenant

6          Employers argues that it is entitled to summary judgment on

7   the first party claims in 10-3336 because Jardine's claim for wall

8   damage is barred by the deterioration exclusion in the Employers

9   policy.  10-3336 MSJ at 6.  The Employers policy provides, in

10  relevant part:  "We will not pay for loss or damage caused by or

11  resulting from any of the following: . . . [r]ust, or other

12  corrosion, decay, deterioration, hidden or latent defect or any

13  quality in property that causes it to damage or destroy itself."

14  Policy at OB 00164 (emphasis added).  In the Maryland MSJ Order,

15  the Court found that Jardine's claim for the same wall damage was

16  barred by almost identical language in the Maryland policy.[11]

17  Maryland MSJ Order at 8-9, 13.  The Court found that the wall

18  damage resulted from deterioration because Jardine had conceded

19  that the damage "occurred over an approximate year and a half

20  time."  Id. at 11.  The Court relied on Berry v. Commercial Union

21  Insurance Co., 87 F.3d 387, 389 n.3 (9th Cir. 1996), where the

22  Ninth Circuit held that "a degradation that takes two years to

23  manifest" was "slow-moving" and therefore constituted

24  deterioration.  See id. at 11.  As the Court is now faced with the

25  same facts, the same law, and a substantially similar policy, it

26  ─────────────────

27  [11] The Maryland policy provides:  "We will not pay for loss or
    damage caused by or resulting from any of the following: . . .
28  Rust, corrosion, fungus, decay, deterioration, hidden or latent
    defect or any quality in property that causes it to damage or
    destroy itself."  See Maryland MSJ Order at 8-9.

reaches the same conclusion -- Jardine's claim for wall damage is barred by the deterioration exclusion in the Employers policy.

Jardine raises many of the arguments that were asserted or might have been asserted in his opposition to Maryland's motion for summary judgment in 10-3318.  See Wall Opp'n at 9-13.  Jardine's recycled arguments were addressed and rejected in the Maryland MSJ Order, and the Court will not address them again here.  See id. at 10-12.  Jardine's new arguments do not change the Court's conclusion.  Jardine is effectively asking the Court to find that its analysis in the Maryland MSJ Order was incorrect.  The Court declines to do so.

Jardine's causes of action for breach of contract and the implied covenant are premised on Employers' refusal to compensate him for his first-party claim for wall damage.  Because Jardine's wall damage claim is barred by the deterioration exclusion in the Policy, he is not entitled to compensation for the wall damage.  Therefore, he cannot possibly prevail on his causes of action for breach of contract and the implied covenant.[12]  Accordingly, the Court GRANTS Employers' motion for summary judgment as to Jardine's first cause of action for breach of contract and second cause of action for breach of the implied covenant in 10-3336.

///

---

[12] Jardine argues that summary judgment is inappropriate on his claim for breach of the implied covenant because substantial factual disputes exist concerning whether Employers acted in bad faith in assessing his claim.  Wall Opp'n at 18.  Jardine asserts that Employers failed to send an agent to assess the problem or adjust the claim.  Id.  Even if this were the case, "a claim for breach of the implied covenant of good faith and fair dealing cannot be maintained unless benefits are due under the plaintiff's insurance policy."  Dollinger DeAnza Assocs. v. Chicago Title Ins. Co., 199 Cal. App. 4th 1132, 1156 (Cal. Ct. App. 2011).  As discussed above, Jardine is not entitled to any additional benefits under the Employers policy.

United States District Court
For the Northern District of California

1    2.    Third-Party Claims under Insurance Code § 11580

2    Section 11580 of the California Insurance Code requires an

3    insurer doing business in California to allow suits by a judgment

4    creditor of its insured.   Specifically, Section 11580 mandates that

5    policies must include:

6        A provision that whenever judgment is secured against the
         insured . . . based upon . . . property damage, then an
7        action may be brought against the insurer on the policy
         and subject to its terms and limitations, by such
8        judgment creditor to recover on the judgment.

9

10   Cal. Ins. Code § 11580(b)(2) (emphasis added).

11   Jardine asserts that Section 11580 entitles him to enforce the

12   Pardo judgment against Employers, Pardo's insurance carrier.   See

13   10-3336 FAC 29-30.   The judgment was for $1,224,203.00, plus costs

14   and attorneys' fees, and Jardine alleges that it "includes [1] the

15   cost of repairing the south wall and the building as a result of

16   the damage to the front section of the wall, and [2] the related

17   lost rental income."   Id. at 27.

18        i.    Third-party claim for wall damage

19   Employers argues that Section 11580 bars Jardine's third-party

20   claim for wall damage because, under the statute, Jardine's right

21   to enforce the Pardo judgment is "subject to" the "terms and

22   limitations" of the Employers policy.   See Wall WSJ at 14-15.

23   Employers further argues that the policy does not cover the relief

24   awarded by the Pardo judgment.   See id.   Employers specifically

25   points to Section I of the General Liability Coverage Form of the

26   Employers policy, which provides, in relevant part:

27       1.    Insuring Agreement
             a.    We will pay those sums that the insured becomes
28               legally obligated to pay as damages because of

22

. . . property damage. . . . However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. . . .

b. The insurance applies to . . . "property damage" only if:

. . .

(3) Prior to the policy, no insured . . . knew that the . . . "property damage" had occurred <u>in whole or in part</u>. If such listed insured . . . knew, prior to the policy period, that the . . . "property damage" occurred, then any continuation, change or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Policy at OB 00171 (emphasis added). Employers argues that the General Liability Coverage Form bars Jardine's third-party claim because Pardo was aware of the wall damage, "in whole or in part," as early as November 2006, several months before the Employers policy incepted on May 15, 2007. <u>See</u> Wall MSJ at 17.

The Court agrees that Insurance Code Section 11580(b)(2), read in conjunction with the Employers policy, bars Jardine's third-party claim to enforce the <u>Pardo</u> judgment against Employers with respect to the wall damage. Insurance Code Section 11580 requires Jardine to establish that the Employers policy covers the relief awarded by the <u>Pardo</u> judgment. The Employers policy does not cover third-party claims for property damage where any one of the insureds (i.e., either Pardo or Jardine) was aware of the property damage, "in whole or in part," before the inception of policy. Pardo has stated in a sworn statement and testified in a deposition that she was aware of the damage to the front section of the south wall of the Property as early as November 2006. <u>See</u> 10-3336

23

1   Silberstein Decl. Ex. 5 ("Nov. 22, 2010 Pardo Decl.") ¶ 2; Id. Ex.

2   8 ("May 25, 2011 Pardo Dep.") at 18:18-18:25, 24:25-26:8.  The

3   policy did not incept until May 15, 2007.  See Policy at OB 00204.

4   Accordingly, Jardine's third-party claim for wall damage

5   necessarily fails.

6       Jardine's arguments to the contrary are unpersuasive.  First,

7   Jardine argues that, contrary to Pardo's declaration and testimony,

8   the damage to the front section of the south wall did not manifest

9   until after the inception of the policy.  See id. at 17-18.

10  Jardine points to his own declaration, stating that he was aware of

11  damage to the rear section of the south wall in November 2006 but

12  "there were no problems with the front section of the south wall"

13  at any time prior to the inception of the policy in May 2007.  10-

14  3336 ECF No. 61 ("10-3336 Jardine Decl.") ¶¶ 14, 16.  Jardine's

15  declaration does not raise a triable issue of fact.  As an initial

16  matter, Jardine's declaration does not say anything about Pardo's

17  knowledge of the front wall damage prior to the inception of the

18  policy.  It is possible that Pardo was aware of the front wall

19  damage in November 2006 while Jardine was not.  Under the express

20  terms of the Policy, Pardo's knowledge of the damage prior to the

21  inception of the policy is sufficient to invoke the policy

22  exclusion.  So long as Pardo knew of the damage in November 2006,

23  Jardine's knowledge is irrelevant.  Additionally, Jardine concedes

24  that he knew about the damage to the rear section of the wall as

25  early as November 2006.  10-3336 Jardine Decl. ¶ 14.  The policy

26  does not apply to property damage where, as here, prior to the

27  policy's inception, an insured "knew that . . . property damage had

28  occurred, in whole or in part."  See Policy at OB 00171.  The

24

United States District Court
For the Northern District of California

1   damage to the front section of the south wall was merely a

2   "continuation, change or resumption" of the sulfate attack in the

3   rear section that had manifested as early as November 2006.  See

4   Policy at OB 00171.  Accordingly, the damage to the front section

5   is "deemed to have been known prior to the policy period."  See id.

6       Second, pointing to the OneBeacon MSJ Order, Jardine argues

7   that the Court has already determined that a triable issue of

8   material fact exists as to whether damage to the front section of

9   the South wall occurred prior to the inception of the Employers

10  policy on May 15, 2007.  Wall Opp'n at 16 (citing OneBeacon MSJ

11  Order at 16).  Jardine overstates the preclusive effect of the

12  Court's prior holding.  In the OneBeacon MSJ Order, the Court

13  addressed the issue of when Jardine knew about the damage to the

14  south wall in the context of California's "loss-in-progress" rule.

15  See OneBeacon MSJ Order at 15-16.  The Court found that Jardine

16  could not recover for damage to the back two sections of the wall

17  but factual issues precluded summary judgment as to the front

18  section of the wall.  See id.  The Court's previous analysis

19  differed because it did not address when Pardo became aware of the

20  damage to the wall or the more stringent exclusion set forth in the

21  Employers policy.[13]

22      For these reasons, the Court holds that Jardine is barred from

23  enforcing the Pardo judgment insofar as it applies to Jardine's

24  claim for wall damage.

25  ///

26  ───────────────

    [13] Jardine also appears to argue that the deterioration exclusion

27  in the Employers policy does not apply to his third-party claims.
    See Wall Opp'n at 15-16.  While that may be the case, the argument

28  is irrelevant since Employers is not attempting to apply the
    deterioration exclusion to Jardine's third-party claims.

**United States District Court**
For the Northern District of California

1                    ii.   Third-party claim for loss of rental income

2        Employers argues that Jardine is also barred from enforcing

3   the Pardo judgment insofar as it applies to Jardine's claim for

4   lost rent.  Employers contends that the policy only covers damages

5   arising out of (1) bodily injury or (2) property damage and that

6   Jardine's claim for lost rent does not qualify as either.  Wall MSJ

7   at 20.  The Court agrees.  The relevant portion of the Employers

8   policy provides:  "We will pay those sums that the insured becomes

9   legally obligated to pay as damages because of 'bodily injury' or

10  'property damage' to which this insurance applies."  Policy at OB

11  00171.  Damages for lost rent qualify as injuries to intangible

12  property which fall outside the scope the Employers policy.  See

13  Continental Casualty Co. v. Super. Ct., 92 Cal. App. 4th 430, 439-

14  40 (Cal. Ct. App. 2001).

15       Jardine contends that, under Vandenberg v. Super. Ct., 21 Cal.

16  4th 815 (Cal. 1999), Employers is obligated to pay all

17  consequential damages, even lost rent resulting from a breach of a

18  lease agreement.  Jardine overstates the holding in Vandenberg.

19  The Vandenberg court held that property damage should have been

20  covered under a commercial general liability policy, regardless of

21  whether that property damage was alleged under a breach of contract

22  or tort cause of action.  21 Cal. 4th at 841.  The Court did not

23  find that a policy that covers only property damage could be

24  interpreted to indemnify the policyholder against all consequential

25  economic losses.

26       Accordingly, the court also finds that Jardine is barred from

27  enforcing the Pardo judgment against Employers to the extent that

28  it applies to Jardine's claim for lost rental income.  As Jardine's

third-party claim for wall damage is also barred, the Court GRANTS

Employers' motion for summary judgment as to Jardine's fourth cause

of action under Insurance Section 11580.

**V.    CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant

Employers Fire Insurance Company's Motions for Summary Judgment

against Plaintiff James Jardine in case numbers 10-3335 and 10-

3336.   JUDGMENT is hereby entered in favor of Employers and against

Jardine with respect to all of Jardine's claims in 10-3335 and 10-

3336.

IT IS SO ORDERED, ADJUDGED, AND DECREED.


Dated: December 27, 2011

_____
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California

27